SUCCESSION OF MARTIN BRODERICK.—On opposition of SPENCER ,FIELD & Co. et als. to the tableau of distribution.

A steamboat is not an object susceptible of hypothecation under the laws of this State.

The Act of Congress regulating the mode of registering mortgages on vessels was not intended to legalize contracts between citizens of the same State, made within the limits of that State, and intended to be executed there, which are contrary to the law of the State.

The limitation of sixty days does not apply in the case of a privilege of a vendor of coal furnished to a steamboat when the coal had never been received on the boat, but was piled up on the bank of the river.

The privilege of the vendor of the engine, boilers and machinery of a vessel, which form a component part thereof, is a privilege under Article 3204 of the Code, and is lost in the sixty days after the materials were furnished.

A judgment obtained by the furnisher of such materials, with a lien and privilege, is not binding upon other creditors who were not parties to the judgment.

An allowance cannot be made for the support of the minor heirs of a succession, under the Act of the 29th March, 1826, when such minor heirs are not creditors of the succession of their deceased parent.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.

*T. W. Collins*, *L. Eyma* and *R. M. Dyson*, for appellants. *Durant & Hornor*, for appellees.

BUCHANAN, J. *Spencer Field & Co.*, appellees, claim a privilege of vendor on certain coal found in this succession, and also a right of mortgage on the ferry-boat Two Brothers.

Their privilege was allowed but their mortgage rejected by the judgment of the court below. They have answered the appeal, and pray that the judgment be amended in their favor by allowing them a right of mortgage upon the proceeds of the Two Brothers.

They offer in evidence an act under private signature, made at New Orleans the 18th July, 1854, whereby *Martin Broderick*, sole owner of the steamboat called the Two Brothers, of New Orleans, as per enrollment No. 100, granted at the port of New Orleans on the 24th day of May, 1854, acknowledged himself indebted to *Spencer Field & Co.*, merchants of this city, in the sum of three thousand four hundred dollars, for coal furnished by said firm to the said steamboat, for which amount said *Broderick* had given nine promissory notes, dated the 18th July, 1854, and payable, monthly, from one to nine months after date, and in order to secure the payment of said notes at their maturity, said *Broderick* mortgaged his said steamboat to the said *Spencer Field & Co.* until the final payment of said notes.

Appended to the mortgage is a certificate from the Collector's office of the port of New Orleans that this mortgage was presented for record at that office on the 18th July, 1854, and recorded in Book A, p. 77.

The counsel of *Field & Co.* contend that under the constitutional power given to Congress to regulate commerce, and Congress having by the statute of 29th July, 1850, (9th Statutes at Large, p. 440,) regulated the mode of registering mortgages on vessels, and the registry of this mortgage having been made in conformity to that Act of Congress, this mortgage is valid and binding, and has the effect of incumbering the steamboat Two Brothers to the prejudice of third persons.

66

SUCCESSION OF
BRODERICK.

The Act of Congress of 29th July, 1850, includes not only hypothecations but all conveyances of vessels. Its expressions are (sec. 1st): "No bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof; unless such bill of sale, mortgage, hypothecation or conveyance be recorded in the office of the Collector of the Customs, where such vessel is registered or enrolled."

We regard this as a mere registry law. It certainly was never intended to legalize contracts between citizens of the same State, made within the limits of that State, and intended to be executed there, which are contrary to the law of the State. And that this pretended hypothecation of the steamboat Two Brothers is contrary to the law of Louisiana is settled by many decisions. See *Malcolm & Wood* v. *Schooner Henrietta*, 7 L. R. 490; *Grant* v. *Fiol*, 17 L. R. 158; *Hills* v. *Phœnix Co.*, 2 Rob. 35; *Clark* v. *Laidlaw*, 4 Rob. 345; *Lambeth* v. *Vawter*, 6 Rob. 127; *Harrod* v. *Churchman*, 4 An. 310. To the same effect was the case of *Wickham* v. *Levistones*, decided by us in May, 1856, and not reported. And we find, upon an examination of the record and briefs in the last mentioned case, that the mortgage of *Hunneville Hill & Co.* upon the Steamship Cincinnati was duly registered under the Act of Congress, and that its registry was specially set forth in the pleadings and argument of counsel. The District Court did not err in rejecting the claim of *Spencer Field & Co.* to a mortgage upon the Two Brothers.

Neither did it err in allowing them the privilege of vendor upon the coal sequestered by them and sold by the Sheriff. The identity of that coal with the coal sold by them to *Broderick* is proved by the witness *Randolph*. Neither does the limitation of sixty days apply to this privilege, as contended by counsel of appellants, for the coal sequestered had never been on board the Two Brothers, but was at first in a flatboat, whence it had been removed on shore, and was piled up on the bank of the river near the ferry landing.

The next matter of which the appellant complains is the allowance of a privilege of vendor upon the boilers, engine and machinery of the Steamboat Two Brothers, in favor of *John Coleman*, as subrogated to a judgment of *Knap & Wade*. The evidence shows that *Knap & Wade* sold the boilers, &c., to *Broderick* in March, 1854, and took in part payment his notes, endorsed by *Coleman*, at four and six months, which were protested at maturity for non-payment, and suit brought against *Broderick* on October 2d, 1854. *Broderick* confessed judgment on the 6th of the same month, "with vendor's lien and privilege upon the boilers, engine and machinery of the steam ferry-boat Two Brothers." On the 11th October the steamboat, her machinery, tackle and apparel were seized in execution and advertised for sale by the Sheriff. But this seizure seems to have been abandoned, for the boat was afterwards, to wit: on the 29th January, 1855, sold by the Sheriff on an order of court obtained on the petition of the executors of *Martin Broderick*, who had died on the 24th October, 1854. *Succession of Gaulden*, 9 An. 205.

*Coleman* has claimed, in an opposition which has been sustained by the judgment of the District Court, the vendor's privilege upon the proceeds of the steamer Two Brothers, but it is very clear that it cannot be allowed. It is true the judgment in favor of *Knap & Wade* recognized such a privilege, and it is also true that *Coleman* has acquired all the rights of *Knap & Wade* under

their judgment. But the engine, boilers and machinery sold by *Knap & Wade* were part of the materials of the vessel, and formed a component part thereof. The privilege of *Knap & Wade* was a privilege under the 3204th Article of the Code, which was lost in sixty days after the materials were furnished. The judgment for a privilege is not at all binding upon the other creditors of *Broderick*, who were not parties to that judgment.

The appellants are special mortgagees upon the real estate of the succession to an amount exceeding the proceeds of said real estate. And as there are no special privileges upon said real estate, they can only be primed by general privileges. Those general privileges are—

| | |
|---|---:|
| 1st. Funeral expenses | $128 50 |
| 2d. Law charges | 1808 55 |
| 3d. Expenses of last illness | 243 30 |
| 4th. Widows' Homestead, $1000—deduct paid on account by executor, $404 97 | 595 03 |
| 5th. Provisions for family of deceased during last six months | 108 40 |
| | $2883 78 |

The account shows that the net proceeds of movables and cash collected to have been (exclusive of the proceeds of the coal, which was absorbed by the special privilege of *S. Field & Co.*) as follows:

| | |
|---|---:|
| Furniture | $740 99 |
| Flatboat, &c | 56 60 |
| Collections | 55 00 |
| Steam ferry-boat Two Brothers | 1818 18 |
| Hire of slaves and rents | 424 18 |
| | $3094 95 |

It is thus seen that the general privileges may be satisfied in full without encroaching upon the immovables.

The application for an allowance of fifty dollars a month to the minors *Broderick*, in addition to the portion allowed under the Homestead Act, was properly rejected.

This application was grounded upon an Act of 29th March, 1826, (Bullard & Curry, 497, 498) section 10. The Act in question only applies to minors who are creditors of the succession of their deceased parent. It is not pretended that the minors *Broderick* have any such claims. The allowance made them under the Homestead Act of 1852 is predicated upon a state of facts inconsistent with the application now made on their behalf. It strikes us as being both unjust to their father's creditors and unwarranted by law to cumulate in their favor, those two statutory remedies.

It is, therefore, adjudged and decreed, that the judgment of the District Court be amended by rejecting the opposition of *John Coleman*, claiming the privilege of vendor upon the proceeds of the steamboat Two Brothers; and that, as thus amended, the judgment be affirmed; the costs of the lower court to be paid by the succession and those of appeal by the appellee, *John Coleman.*